## SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY *v.* BENSON.

### Opinion delivered December 12, 1896.

INTERPLEADER—WHEN LIES.—A bill of interpleader will not lie where petitioner denies his liability to either claimant as to part of the fund in suit, although he admits his liability for the balance.

PARTIES—MISJOINDER—DISMISSAL.—Where, in an action at law upon a debt, the debtor procures one who had obtained a garnishment against him to be made a party, and asks that the cause be transferred to equity, to determine the respective rights of the plaintiff and the garnisher, and the court refuses to transfer the cause or grant the relief asked, the garnisher should be dismissed from the action, and left to pursue his remedy on his garnishment.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

*W. J. Terry* for appellant Telegraph Company.

The cause should have been transferred to equity. Sand. & H. Dig., sec. 5619. Interpleader is one of the recognized heads of equity jurisdiction. 2 Story, Eq. Jur. sec. 806; 11 Am. & Eng. Enc. Law, p. 496 and p. 506. For practice, see 2 Paige, Ch. 572; 3 Edw. Ch. (N. Y.), 71; Story's Eq. Jur. sec 801; 2 *id.* sec. 824; 20 Ark. 641; 3 Wait's Ac. & Def. p. 138.

*Dan W. Jones & McCain* for appellant Bank of Little Rock.

When the court refused to transfer the cause to equity, it should have dismissed the bank from the case. 46 Ark. 272; Story, Eq. Jur. sec. 805; 2 Paige, Ch. 570; Sand. & H. Dig., sec. 5619.

*G. W. Murphy* for appellee.

The court could not properly transfer to equity. Sand. & H. Dig., sec. 5619. The bank is not prejudiced.

BUNN, C. J.   This is an action by Mrs. V. Benson, the appellee here, against the Southwestern Telegraph & Telephone Company to recover the sum of $442, a balance due on the contract price and extra work and labor done and materials furnished in constructing appellant's line from Pine Bluff to Little Rock.

Defendant answered, denying that it owed plaintiff the said sum of $442, but alleging that it owed her, if anything, only the sum of $150, which said sum had been deposited, by agreement between them, in court, to await the result of another action then pending also in the circuit court of Pulaski county, wherein the Bank of Little Rock, having previously recovered judgment therein in the sum of $123.88 and costs against J. W. Benson, husband of plaintiff herein, had sued out a writ of judicial garnishment on said judgment against the said Telegraph & Telephone Company as garnishee, and in which the company had answered the facts as stated in regard to its indebtedness to Mrs. Benson or her husband.

On motion of the Telegraph & Telephone Company, through its attorney, the Bank of Little Rock was made a party defendant, and it immediately entered its appearance by its attorney, and moved the court to transfer the cause to the equity court. Afterwards it united with defendant telephone company in a motion to transfer the cause to the equity court, having at the same time filed its answer to the cross-bill and counterclaim of the defendant company, asking that said answer be also taken as a cross-bill. In the answer and cross-bill the bank alleged that J. W. Benson, the husband, was insolvent, and that, being insolvent, in order to hinder and defraud his creditors, he had transferred certain of his property to his wife, the said Mrs. V. Benson, with a fraudulent intent to defraud his creditors, and particularly that said husband, with such intent, by the

contract or pretended contract sued on made in her name, but for his benefit, caused about $800, which defendant company owed said husband under said contract, to be put in the name of the plaintiff, his wife, without any consideration; and although the said defendant was really indebted to the husband in the sum of $800, it and the husband pretended that whatever was owing on said contract was owing to the wife.

The motion to transfer was overruled, as also was the motion to dismiss the bank from the case. Exceptions were taken, and the bank was invited by the court to take part as a party in the subsequent proceedings, but it declined to do so, and asked to be permitted to withdraw, which was refused by the court, and the cause was proceeded with, resulting in judgment in favor of Mrs. V. Benson against the Telegraph & Telephone Company in the sum of $250.

In the closing proceedings, after the overruling of the motion to transfer and to dismiss defendant company's cross-bill by the bank, no mention of the interest of the bank is made, and it seems to have been treated as having voluntarily withdrawn from the case, and its pleas were in no manner disposed of or noticed.

The bank appealed from the ruling of the court refusing to transfer to equity, in refusing to dismiss the cross-bill of the defendant company against it, and in not permitting it to withdraw after said motion was overruled, and the rulings were excepted to, and this raises the first question for our consideration.

The interpleader sought to be obtained in this action must not be confused with the statutory provisions which enable third parties having certain interest in the subject-matter of proceedings at law to voluntarily appear, assert their rights or claim, and ask that the same be adjudicated. The interpleader here sought is purely a matter of equity, and the relief is obtained by

*When bill of interpleader lies.*

the bill for interpleader filed in a court of equity, containing all the necessary averments upon which all parties against whom the relief is sought will be summoned to appear and plead, and the matter involved will be in that court adjusted and settled, and proper decree rendered. Among the necessary averments in the bill for interpleader is that the plaintiff therein has property or money which may lawfully belong to one or the other of the defendants brought in, and that plaintiff has no other interest in the property or fund than to have it delivered or paid to the one entitled, and seeks to be protected from a mistake he might make by acting without judicial direction.

Under the rule of some of the English courts, an interpleader would be allowed in this case, since a portion of the amount involved the $150—is undisputed. But under the rule universally followed by the American courts, and which we adhere to, an interpleader would not be allowed, because, at the time of filing the bill for the same, there was still a controversy between the defendant and the plaintiff in this action over the remaining portion; that is, petitioner still had an interest in the litigation other than to have the fund properly applied or paid to the proper party. The bill itself, or the petition in the case, being without the necessary averments as a bill for an interpleader, the motion to transfer to the equity court was properly overruled.

Misjoinder of parties. A bill for interpleader being cognizable only in an equity court, and the bill in this case being without the proper averments to be transferred, the retention of the bank as a party to this case was erroneous. It should have been permitted to withdraw as asked.

As to the controversy between Mrs. V. Benson on the one part and the telephone company on the other, the issue was as to whether or not defendant owed the $442, as claimed by plaintiff, or only $150, as contended

by defendant; and this issue seems to have been tried without the trial being affected in any manner by the appearance of the bank in the suit, and we therefore treat the case as independently tried and regularly appealed.

The only question left for our consideration is, does the evidence sustain the verdict in favor of Mrs. Benson and against the Telegraph & Telephone Company?

J. W. Benson, husband and agent of Mrs. V. Benson, testified that he rendered an account for extra work and all credits to Adams, the agent and manager of defendant company,—the account on page four of the transcript,—and then he says, in relation thereto: "Exhibit 'B' to the complaint is a copy of the bill sent by me to Mr. Adams after the work was done. I went to see Mr. Adams, with a view of having a final settlement. I found he had been garnished by the Bank of Little Rock. We looked over the account I had rendered, and scratched off some items, and allowed some charges for extra work, and he then said he would hold $150 back until the determination of the suit of the bank. He paid me on that day, January 16th, the sum of $163.40 leaving a 'balance of $150, according to the way that account showed which I O.K'd. But. the account is not as I O.K'd it. The letters dated Hensley. Arkansas, January 14th, 16th, and 26th, and February 7, 1893, addressed to A. F. Adams, were written by me for Mrs. V. Benson. The reason I agreed to allow him to retain the $150 is that I was trying to get the amount within the jurisdiction of a justice of the peace, after the advice of my attorneys."

The evidence of both J. W. Benson and Adams plainly shows that the account presented to Adams by Benson was adjusted between them, a balance struck, a check given for $163.40, as part payment of the balance due, leaving a final balance of $150, which they had

agreed to leave unpaid to await the determination of the garnishment, and that J. W. Benson, acting all the while as the agent of Mrs. V. Benson, O.K'd the account, as then adjusted, and the letters from Mrs. V. Benson directly, and from J. W. Benson as her agent, to Adams, all written subsequent to the settlement between them, evidence without a doubt a ratification of the settlement, and only express claim for the $150. The testimony of Lee that all the extra work charged for was done, and was worth what was charged for it, is not inconsistent with the adjustment of the account as claimed by Adams, since some of the extra work may have been in place of corresponding items provided for in the main or original contract; in which case only the difference between extra work and the contract work should be added to the original.

At all events, the parties' settlement of the matter does away with the necessity of outside testimony, and that settlement is shown to have been made, without a doubt.

If the plaintiff will in 15 days enter a remittitur, so that the judgment will be for $150, instead of $250, then the judgment will be affirmed; otherwise, it will be reversed, and the cause remanded.

The Bank of Little Rock is dismissed from the case, to pursue its remedy by garnishment, as it may deem proper.